# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND
# GREENBELT DIVISION

**HD**

**Thomas Gibson**,
a disabled,
unhoused resident of
Montgomery County,
Maryland;

Rcv'd by: _____ _en_

USDC- GREENBELT
'25 NOV 17 AM 9:22

      Plaintiff,

Civil Action No. DLB 2 5 CV 0 3 7 5 8

v.

**Donald J. Trump**,
in his official capacity as
President of the
United States,

**Scott Turner**,
in his official capacity as the
Secretary of the
United States Department of
Housing and Urban Development

      Defendants.

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

*"Vagrancy laws cast a net so wide that the innocent as well as the guilty are
ensnared, and they encourage arbitrary and erratic arrests."*
*Papachristou v. City of Jacksonville, 405 U.S. 156 (1972)*

To protect his rights under the United States Constitution, Plaintiff Thomas
Gibson brings this action on his own behalf against Defendants President
Donald J. Trump and the Secretary of the U.S. Department of Housing and
Urban Development, Scott Turner.

## **INTRODUCTION**

1. Plaintiff brings this action to challenge Executive Order 14321, issued on
   July 24, 2025, titled *"Ending Crime and Disorder on America's Streets."* The
   Order revives, in modern form, the unconstitutional vagrancy laws
   struck down more than fifty years ago in *Papachristou v. Jacksonville, 405
   U.S. 156 (1972)*. Although presented as a public safety measure, Executive
   Order 14321 targets people based entirely on their status, including
   homelessness, poverty, mental illness, or substance use disorder, rather
   than on any criminal conduct. It authorizes detention, civil commitment,
   and forced treatment of individuals for who they are, not for what they
   have done.

2.  Executive Order 14321 repeatedly links homelessness with criminality. It describes the nation as suffering from *"endemic vagrancy,"* claims that homeless individuals pose a public safety threat because the *"overwhelming majority"* have mental illness or use drugs, and labels their presence in public spaces as disorderly and dangerous. This framing treats the mere condition of being homeless as evidence of guilt, dangerousness, and lawlessness. These are the same unconstitutional assumptions underlying the vagrancy ordinances at issue in *Papachristou*, where the Supreme Court held that laws punishing status, appearance, or presence in public space are void for vagueness, overbroad, and prone to arbitrary and discriminatory enforcement.

3.  Executive Order 14321 directs federal agencies to identify and remove people from public spaces if they are living on the street, appear unable to care for themselves, or have a mental health condition or substance use disorder. It instructs agencies to place such individuals in treatment centers, assisted outpatient programs, or civil commitment facilities *"to the maximum extent permitted by law."* The Order does not require evidence of danger or criminal conduct, and it provides no standards to prevent arbitrary enforcement. Civil commitment authorized on this basis constitutes a seizure under the Fourth Amendment, yet the Order permits it without probable cause, individualized determinations, or due process.

2

4. Executive Order 14321 also directs the Department of Housing and Urban Development to eliminate support for Housing First programs, the nation's primary homelessness prevention and disability accommodation model for more than two decades. HUD has already carried out this directive by cutting approximately seventy percent of Permanent Supportive Housing and Continuum of Care funding. These cuts will push an estimated 170,000 people nationwide into homelessness in early 2026. In Montgomery County alone, more than seven hundred disabled residents will lose their housing or shelter placements. The Order therefore creates homelessness by dismantling essential programs, and then uses that homelessness as the basis for detention and commitment. This two-step process recreates unconstitutional vagrancy enforcement through a civil commitment framework.

5. Executive Order 14321 further requires HUD funded homeless service providers to collect personal information about individuals seeking assistance, including mental health history, substance use information, disability details, and service use, and to share this information with law enforcement agencies. This creates a national surveillance and data-sharing system that identifies and targets homeless individuals for detention, forced treatment, and civil commitment. Such compelled disclosure violates privacy principles, the Fourth Amendment, the Fifth Amendment, and disability confidentiality protections.

6. States have already begun implementing Executive Order 14321 as intended. Utah, for example, has publicly announced construction of facilities containing three hundred involuntary civil commitment beds and a *"work conditioned housing"* program as a direct result of the Order. These programs require detained homeless individuals to participate in labor as a condition of placement or release. Such involuntary labor violates the Thirteenth Amendment because civilly committed persons have not been convicted of any crime.

7. The foreseeable consequences of Executive Order 14321 have been widely documented and repeatedly warned against by elected officials and national organizations. Montgomery County Executive Marc Elrich warned that the HUD funding cuts will create severe service gaps and worsen homelessness in Maryland. The National Coalitions of Cities, Counties, and Mayors cautioned that implementing the cuts would disrupt essential housing services nationwide and increase the risk of widespread civil commitment. Twenty two members of Congress also warned that these policies would cause imminent and preventable harm to vulnerable populations, including children, seniors, and individuals with disabilities. These warnings show that the federal government is acting with full knowledge of the devastating and predictable harms its policy will cause.

8. Executive Order 14321 will have a predictable and disproportionate racial impact. Black Americans represent roughly thirteen percent of the national population but nearly forty percent of the homeless population. Hispanic and Latino individuals are also significantly overrepresented. By eliminating Housing First and authorizing detention and civil commitment based on homelessness, the Order targets Black and Brown communities for disproportionate harm. This violates the Equal Protection Clause and Title VI of the Civil Rights Act.

9. Disabled individuals will also be disproportionately harmed. Most people in Housing First and Permanent Supportive Housing programs meet the definition of disability under the Americans with Disabilities Act. Eliminating these programs removes a critical accommodation and then uses the resulting homelessness as grounds for detention. This violates the ADA and the integration mandate recognized in *Olmstead v. L.C.*, which forbids unjustified institutionalization of people with disabilities.

10. Plaintiff is a disabled Black man residing in a HUD funded homeless services program in Montgomery County, and is on a waitlist to receive Permanent Supportive Housing. The HUD cuts mandated by Executive Order 14321 will cause the loss of services and could potentially force Plaintiff into street homelessness in early 2026. Under the Order's framework, Plaintiff's homelessness, disability, and poverty will make him a direct target for surveillance, detention, civil commitment, forced

treatment, and involuntary labor programs. Plaintiff faces immediate and irreparable harm. He brings this action to prevent the federal government from manufacturing homelessness and then criminalizing the very individuals it has displaced.

## PARTIES

### Plaintiff

11. Plaintiff Thomas Gibson is a resident of Montgomery County, Maryland. Plaintiff is a Black man with disabilities who is currently experiencing homelessness and resides in a shelter funded through the Department of Housing and Urban Development's Continuum of Care program. Plaintiff relies on HUD funded services for shelter, safety, and basic survival. Plaintiff brings this action pro se to challenge the enforcement and implementation of Executive Order 14321 because the Order places him at immediate risk of homelessness, detention, civil commitment, forced treatment, and other deprivation of liberty.

12. Although Plaintiff is filing individually, the actions of EO 14321 have nationwide consequences, creating systemic harm to individuals experiencing homelessness, especially those who are disabled or members of ethnic/racial minority groups. Plaintiff's allegations demonstrate the broad impact of EO 14321 and prob context to the Court of the unlawful policy.

**Defendants**

13. Defendant Donald J. Trump is the President of the United States and is sued in his official capacity for declaratory relief. Plaintiff seeks a declaration that Executive Order 14321 is unconstitutional. Plaintiff does not seek damages or coercive relief against the President.

14. Defendant Scott Turner is the Secretary of the United States Department of Housing and Urban Development and is sued in his official capacity. Secretary Turner is responsible for implementing Executive Order 14321 through HUD programs and funding decisions, including the termination of Housing First and the reduction of Continuum of Care funding. Plaintiff seeks injunctive relief to prevent the enforcement of policies and actions taken by HUD under Executive Order 14321.

15. Defendants include any unknown or future federal officials responsible for enforcing or carrying out Executive Order 14321 and its required actions, including the implementation of civil commitment directives, the collection and sharing of data on homeless individuals, or the termination of housing programs. These defendants are sued in their official capacities for injunctive relief only.

## JURISDICTION AND VENUE

16. This Court has subject matter jurisdiction under 28 U.S.C. § 1331 because this action arises under the Constitution and laws of the United States. Plaintiff brings claims under the First, Fourth, Fifth, Eighth, Thirteenth, and Fourteenth Amendments, the Americans with Disabilities Act, Title VI of the Civil Rights Act, and the Administrative Procedure Act.

17. This Court has authority to issue declaratory relief under 28 U.S.C. §§ 2201-2202. This Court has authority to issue injunctive relief against federal officials acting in their official capacities under the doctrine of *Ex parte Young, 209 U.S. 123 (1908)*, as applied to federal agencies through 5 U.S.C. section 702.

18. Venue is proper in the United States District Court for the District of Maryland under 28 U.S.C. § 1391(e). Plaintiff resides in this District, and a substantial part of the events, injuries, and threatened harms described in this Complaint will occur in this District, including the loss of housing and services resulting from HUD's implementation of Executive Order 14321.

19. This Court has the authority to grant the relief requested to prevent ongoing and imminent Constitutional and statutory violations.

## FACTUAL ALLEGATIONS

20. On July 24, 2025, President Donald J. Trump issued Executive Order 14321, titled *"Ending Crime and Disorder on America's Streets."* The Order states that the United States is facing *"endemic vagrancy"* and directs federal agencies to take actions targeting people experiencing homelessness, poverty, mental illness, and substance use disorder.

21. The Executive Order repeatedly equates homelessness and poverty with criminality. It states that people living on the streets pose a public danger because the "overwhelming majority" are addicted to drugs or have mental health conditions, and it describes homeless individuals as sources of crime, disorder, and public safety threats even when they have committed no crime.

22. Executive Order 14321 directs federal agencies to remove individuals from public areas based solely on their homelessness, mental illness, or perceived inability to care for themselves. It instructs agencies to move such individuals into treatment centers, assisted outpatient programs, or civil commitment facilities "to the maximum extent permitted by law" without requiring any criminal conduct.

23. Civil commitment authorized in this manner constitutes a seizure under the Fourth Amendment, yet the Executive Order instructs agencies to detain people without probable cause, individualized danger assessments, or procedural protections.

24. Executive Order 14321 further directs the Attorney General to seek the reversal of judicial standards that protect individuals from unjustified involuntary commitment. The Order encourages states to expand their commitment laws to allow detention of individuals based on homelessness or perceived incapacity rather than on actual danger.

25. The Executive Order instructs the Department of Housing and Urban Development to eliminate the federal government's Housing First model, which has been the primary homelessness prevention and disability accommodation framework for over twenty years. HUD has carried out this directive by cutting approximately seventy percent of Housing First and Continuum of Care funding nationwide. These cuts will displace an estimated 170,000 people and force them into homelessness beginning in early 2026.

26. In Montgomery County, Maryland, where Plaintiff resides, these cuts will result in substantial loss of permanent supportive housing and shelter placements. Hundreds of disabled residents are at risk of being forced

into homelessness as a direct consequence of Executive Order 14321 and HUD's implementation of it.

27. Executive Order 14321 effectively creates a two-step process. First, the Order eliminates programs that keep disabled and vulnerable people housed. Next, the Order uses the predictable homelessness caused by these cuts as the basis to detain, commit, or forcibly treat the very individuals the federal government displaced. This recreates unconstitutional vagrancy enforcement through a civil commitment framework.

28. The Order also requires HUD-funded homeless service providers to collect personal information about individuals receiving services, including mental health history, substance use information, disability status, and service use. It then requires providers to share this information with law enforcement agencies, creating a national data-sharing system used to target homeless and disabled individuals for detention and commitment. This forced data collection and sharing violates privacy principles, the Fourth Amendment, the Fifth Amendment, and disability confidentiality protections.

29. States have already begun implementing Executive Order 14321 as intended. Utah has publicly announced construction of a facility

containing three hundred civil commitment beds and a "work conditioned housing" program created specifically to comply with the Executive Order. The program requires civilly detained individuals experiencing homelessness to participate in labor as a condition of receiving housing or release. This constitutes involuntary servitude prohibited under the Thirteenth Amendment, because these individuals have not been convicted of any crime.

30. The foreseeable harms caused by Executive Order 14321 have been widely documented and warned against by public officials. Montgomery County Executive Marc Elrich warned that HUD's cuts will create major service gaps and increase homelessness in Maryland. National organizations representing cities, counties, and mayors warned that these cuts will severely disrupt homelessness services nationwide and increase the likelihood of widespread civil commitment. Twenty-two members of Congress also warned that these policies will cause imminent and preventable harm to vulnerable populations, including disabled individuals and families.

31. Executive Order 14321 will have a disproportionate impact on Black and Brown communities. According to HUD data, Black Americans represent roughly thirteen percent of the national population but nearly forty percent of people experiencing homelessness. Hispanic and Latino individuals are also disproportionately represented. By eliminating

housing programs and authorizing detention based on homelessness, the Order targets Black and Brown individuals for disproportionate harm in violation of the Equal Protection Clause and Title VI.

32. Disabled individuals will also be disproportionately harmed. Most individuals in permanent supportive housing and Housing First programs have disabilities under the Americans with Disabilities Act. Eliminating these programs removes a critical accommodation and increases the risk of unnecessary institutionalization in violation of the ADA and the integration mandate recognized in *Olmstead v. L.C.*

33. Plaintiff is a disabled Black man currently experiencing homelessness in Montgomery County. Plaintiff depends on HUD-funded shelter and services for basic safety and survival. HUD's implementation of Executive Order 14321 places Plaintiff at immediate risk of losing access to permanent supportive housing, shelter and being forced into street homelessness in early 2026.

34. Under the Executive Order, Plaintiff's homelessness, disability, and poverty will make him a target for surveillance, detention, civil commitment, forced treatment, and involuntary labor. Plaintiff faces imminent, concrete, and irreparable harm as a result of the actions mandated by Executive Order 14321.

35. The federal government is acting with full knowledge of the harms its policy will cause. Despite repeated warnings from local and national officials and organizations, the administration has chosen to implement Executive Order 14321 in a manner that creates homelessness and then criminalizes the individuals affected.

## CLAIMS FOR RELIEF

### Count I – Violation of the Fourteenth Amendment (Equal Protection Clause)

36. Plaintiff incorporates all prior allegations as if fully stated here. Plaintiff brings this claim under the Equal Protection Clause of the Fourteenth Amendment, which prohibits the federal government, through the Fifth Amendment's equal protection component, from enforcing policies that intentionally or foreseeably discriminate against protected groups or that irrationally classify and burden politically powerless groups without legitimate justification.

37. Executive Order 14321 violates the Equal Protection Clause because it creates and implements a vagrancy-based enforcement regime that disproportionately targets homeless individuals, disabled individuals, and Black and Brown individuals for detention, civil commitment, forced treatment, and loss of liberty. The Order does not regulate unlawful conduct. Instead, it treats homelessness, poverty, mental illness, and substance use disorder as markers of criminality and dangerousness, and

it directs agencies to remove individuals from public spaces and place them into involuntary treatment or civil commitment based solely on these characteristics. Punishing an individual for their status rather than their actions is impermissible under the Equal Protection Clause and violates fundamental constitutional protections established in Supreme Court precedent.

38. The discriminatory impact of Executive Order 14321 on Black and Hispanic Americans was both foreseeable and known to the government at the time the Order was issued. National HUD data show that Black Americans represent approximately thirteen percent of the general population but nearly forty percent of the homeless population. Hispanic and Latino individuals are also significantly overrepresented. Multiple state and local officials, national organizations, and members of Congress warned the administration that eliminating Housing First and expanding civil commitment would disproportionately harm Black and Brown communities. Under the *Arlington Heights* framework, the foreseeable disparate impact, the historical background of vagrancy laws, the specific sequence of events leading to the Order, and the administration's awareness of these racial disparities support an inference of discriminatory intent and unconstitutional racial targeting.

39. Executive Order 14321 also discriminates against individuals with disabilities. The Order explicitly identifies people with mental health

conditions, substance use disorders, or perceived inability to care for themselves as appropriate subjects for detention, civil commitment, and removal from public space. The Order's directive to end Housing First eliminates a critical disability accommodation that enables disabled individuals to remain stably housed. Removing this accommodation and then using the resulting homelessness as the basis for detention constitutes discriminatory treatment on the basis of disability that lacks any rational relationship to a legitimate governmental purpose.

40. Even if the Order were analyzed under rational basis review for its treatment of homeless and impoverished individuals, it would still fail constitutional scrutiny. A policy that dismantles housing programs, knowingly forces individuals into homelessness, and then uses that manufactured homelessness as a predicate for detention and civil commitment is arbitrary, irrational, and contrary to the principles of equal protection. Such an approach bears no reasonable connection to public safety and instead imposes punitive consequences on individuals for conditions beyond their control.

41. Plaintiff is a disabled Black man currently residing in a HUD-funded homeless services program in Montgomery County, Maryland. The implementation of Executive Order 14321 and HUD's associated funding cuts will cause the loss of HUD funding housing assistance or force Plaintiff into homelessness, where he will face a heightened risk of

detention, civil commitment, forced treatment, and involuntary servitude solely because of his race, disability, and economic status. Plaintiff is subjected to unequal treatment under law because Executive Order 14321 identifies him, by virtue of these characteristics, as an appropriate target for enforcement.

42. For these reasons, Executive Order 14321 violates the Equal Protection Clause of the Fourteenth Amendment, and Plaintiff is entitled to declaratory and injunctive relief.

## Count II – Violation of the Fourteenth Amendment (Substantive Due Process)

43. Plaintiff incorporates all prior allegations as if fully stated here. This claim is brought under the substantive component of the Due Process Clause of the Fourteenth Amendment, which protects individuals from government actions that infringe upon fundamental rights and liberties, including the rights to bodily integrity, freedom from unjustified restraint, and freedom from arbitrary government interference in personal autonomy.

44. Executive Order 14321 violates substantive due process because it authorizes the detention, confinement, and civil commitment of individuals based solely on their homelessness, poverty, disability, or

perceived inability to care for themselves. None of these characteristics constitute criminal conduct. Substantive due process prohibits the government from depriving individuals of liberty unless the deprivation is justified by a legitimate and compelling governmental interest and carried out through means that are narrowly tailored and non-arbitrary. Executive Order 14321 does not meet this standard.

45. The Supreme Court has long held that civil commitment is a profound deprivation of liberty that is constitutionally permissible only when an individual is both mentally ill and dangerous. Executive Order 14321 disregards this standard. It directs agencies to remove and detain individuals who are *"living on the streets"* or who *"cannot care for themselves,"* even in the absence of any evidence of danger or wrongdoing. It encourages states to expand their civil commitment criteria and adopt *"maximally flexible"* standards that would allow confinement based on status rather than conduct. This violates the substantive due process principles established in *O'Connor v. Donaldson* and *Addington v. Texas*.

46. Executive Order 14321 also directs agencies to dismantle Housing First, a long-standing disability accommodation that prevents unnecessary institutionalization. By eliminating Housing First, the government knowingly exposes disabled and vulnerable individuals to homelessness and then uses that homelessness as the basis for confinement. Causing

the very harm the government then claims as a justification for detention is the definition of arbitrary and abusive government action and violates the core protections of substantive due process.

47. The Order further infringes upon bodily integrity and personal autonomy by authorizing involuntary treatment, assisted outpatient treatment, and placement into *"treatment centers"* even without any individualized finding of necessity. Civil commitment and forced treatment are significant intrusions into fundamental liberty interests and cannot constitutionally be imposed on individuals who have not been shown to be dangerous or in need of such intervention through rigorous procedural safeguards.

48. Executive Order 14321 also directs HUD-funded providers to collect, retain, and disclose personal information about homeless individuals, including mental health history, substance use information, and disability details, and to share that information with law enforcement. Compelling individuals to surrender private medical and behavioral information as a condition of accessing shelter or services violates substantive due process rights to privacy, autonomy, and bodily integrity. Individuals experiencing homelessness do not waive their constitutional rights by seeking help.

49. These actions, collectively and individually, constitute arbitrary and conscience-shocking exercises of government power. The federal government may not create homelessness through the elimination of essential housing programs and then justify detention on the basis of the homelessness it caused. Nor may it treat vulnerable populations as presumptively dangerous and subject to confinement solely because of their status. Executive Order 14321 lacks any reasonable relationship to a legitimate governmental aim and instead imposes severe liberty deprivations on constitutionally prohibited grounds.

50. Plaintiff is directly threatened by these unconstitutional policies. Plaintiff is a disabled Black man who depends on HUD-funded services for survival. The implementation of Executive Order 14321 places Plaintiff at immediate risk of homelessness and subjects him to detention, forced treatment, and civil commitment solely because of his disability, poverty, and housing status. This constitutes a direct violation of Plaintiff's substantive due process rights.

51. For these reasons, Executive Order 14321 violates the substantive component of the Fourteenth Amendment's Due Process Clause, and Plaintiff is entitled to declaratory and injunctive relief.

**Count III – Violation of the Fourteenth Amendment (Procedural Due Process)**

52. Plaintiff incorporates all prior allegations as if fully stated here. This claim is brought under the Procedural Due Process Clause of the Fourteenth Amendment, which prohibits the government from depriving individuals of liberty or property without adequate notice, an opportunity to be heard, and other fundamental safeguards required by the Constitution.

53. Executive Order 14321 violates procedural due process because it authorizes severe liberty deprivations, including detention, involuntary treatment, and civil commitment, without requiring any of the procedural protections traditionally mandated by law. Civil commitment is one of the most significant intrusions upon an individual's liberty. The Supreme Court has repeatedly held that such confinement may occur only after rigorous procedural safeguards, including notice, a meaningful hearing, and proof of both mental illness and dangerousness by clear and convincing evidence. Executive Order 14321 disregards these constitutional requirements.

54. The Order instructs federal agencies and law enforcement to remove individuals from public spaces and place them into treatment centers or civil commitment facilities based solely on their homelessness, poverty, perceived inability to care for themselves, or presence of a mental health

or substance use condition. It contains no requirement for individualized assessments, no requirement for probable cause, no requirement for a judicial hearing, and no requirement for evidence of danger. This structure permits detention on subjective or discriminatory grounds and deprives affected individuals of the most basic procedural protections guaranteed by the Constitution.

55. Executive Order 14321 also encourages states to broaden their civil commitment standards and to adopt more flexible criteria that permit detention based on homelessness or visible incapacity rather than actual risk. By pushing states to lower commitment thresholds and reduce procedural safeguards, the Order increases the likelihood that individuals will be institutionalized with little or no process. The federal government may not incentivize or direct states to adopt procedures that fall below constitutional minimums.

56. In addition to authorizing detention without adequate procedures, Executive Order 14321 requires HUD-funded providers to collect and disclose private medical, mental health, disability, and behavioral information about homeless individuals to law enforcement agencies. This compelled disclosure occurs without notice, without consent, without an opportunity to challenge the disclosure, and without any mechanism for individuals to review or contest how their personal information is used. Procedural due process requires notice and an

22

opportunity to be heard before the government disseminates or uses sensitive personal information in a manner that may lead to detention or legal consequences.

57. The elimination of Housing First and the drastic reduction of Continuum of Care funding also implicate procedural due process rights. Individuals who rely on these programs for shelter, disability accommodation, and basic safety face immediate loss of these interests without adequate notice or any meaningful opportunity to contest the government's actions. When the government terminates essential benefits or services that individuals rely on for survival, procedural due process requires a fair process, including notice and an opportunity to respond. Executive Order 14321 and HUD's implementation actions provide neither.

58. These failures in procedural safeguards are particularly harmful because the Order targets individuals who are uniquely vulnerable: homeless individuals, people with disabilities, and those with mental health or substance use conditions. These groups face substantial barriers to receiving notice, accessing legal representation, or advocating for themselves. The Constitution requires more protection for vulnerable individuals facing severe liberty deprivations, not less.

59. Plaintiff is directly threatened by these procedural failures. Plaintiff is a disabled Black man who depends on HUD–funded shelter and services for his basic safety. The termination of these programs places Plaintiff at imminent risk of homelessness. Under Executive Order 14321, Plaintiff may be detained or committed without notice, without a meaningful opportunity to contest the allegations against him, and without the procedural safeguards required for any deprivation of liberty. Plaintiff faces the risk of civil commitment and forced treatment without due process solely because of his homelessness, disability, and poverty.

60. For these reasons, Executive Order 14321 violates the Procedural Due Process Clause of the Fourteenth Amendment, and Plaintiff is entitled to declaratory and injunctive relief.

**Count IV – Violation of the Fourth Amendment (Unreasonable Seizures and Privacy Violations)**

61. Plaintiff incorporates all prior allegations as if fully stated here. This claim arises under the Fourth Amendment, which protects individuals against unreasonable searches and seizures and prohibits the government from detaining or searching individuals without lawful justification, individualized suspicion, or proper legal authority.

62. Executive Order 14321 violates the Fourth Amendment because it authorizes the detention, removal, and civil commitment of individuals based solely on their homelessness, poverty, disability, or perceived inability to care for themselves. Civil commitment, involuntary transport to treatment facilities, and forced removal from public spaces are all seizures under the Fourth Amendment. The Supreme Court has made clear that a seizure occurs whenever an officer restrains a person's freedom of movement through physical force or a show of authority. Removing a homeless person from public space or placing them into a treatment program or civil commitment facility constitutes such a restraint.

63. Executive Order 14321 does not require probable cause, reasonable suspicion, or individualized assessment of dangerousness before authorizing these seizures. Instead, it directs agencies to identify and detain individuals solely because they are homeless or have a mental health or substance use condition. The Constitution does not permit the government to detain individuals on the basis of status rather than conduct. Seizing and confining individuals under these circumstances is unreasonable and violates fundamental Fourth Amendment protections.

64. The Order also encourages states to expand their civil commitment criteria in ways that remove traditional checks on governmental authority. It directs policymakers to adopt broader standards that allow

detention based on perceived incapacity or visible poverty, rather than on evidence of danger or wrongdoing. Lowering civil commitment thresholds in this way increases the risk of arbitrary seizures and violates constitutional protections against unreasonable government restraint.

65. In addition to authorizing unlawful seizures, Executive Order 14321 violates the Fourth Amendment's protections against unreasonable searches. The Order requires HUD-funded homeless service providers to collect and disclose personal information about homeless and disabled individuals to law enforcement, including mental health history, substance use information, disability status, and service usage. This compelled collection and transmission of sensitive information serves a law enforcement purpose and occurs without individualized suspicion, judicial authorization, or consent. Individuals experiencing homelessness are not required to surrender their privacy rights as a condition of seeking shelter or basic services.

66. The creation of a system in which the government monitors and shares medical and behavioral information about homeless individuals with police agencies constitutes an unreasonable search under established Fourth Amendment principles. It allows law enforcement to access private information without warrants, judicial oversight, or individualized cause, and it enables the government to use that

information to justify detention or civil commitment. Such actions undermine fundamental constitutional protections against surveillance and intrusion.

67. These Fourth Amendment violations are especially serious because the Order targets individuals who are already vulnerable due to homelessness, poverty, and disability. Rather than providing support, the federal government's actions expose these individuals to unconstitutional detention and surveillance without probable cause or due process.

68. Plaintiff is directly threatened by the Order's unlawful search and seizure provisions. Plaintiff relies on HUD-funded services for shelter and is subject to the data collection and surveillance requirements imposed by the Executive Order. Once the HUD cuts take effect, Plaintiff faces detention and civil commitment without probable cause or individualized determination. These actions place Plaintiff at immediate risk of unconstitutional seizure and unlawful invasion of his privacy rights.

69. For these reasons, Executive Order 14321 violates the Fourth Amendment, and Plaintiff is entitled to declaratory and injunctive relief.

## Count V – Violation of the Fifth Amendment (Self-Incrimination, Privacy, and Liberty Interests)

70. Plaintiff incorporates all prior allegations as if fully stated here. This claim arises under the Fifth Amendment, which protects individuals from compelled self-incrimination, prohibits the government from forcing individuals to disclose private or incriminating information without due process, and guarantees basic privacy and liberty interests against arbitrary federal action.

71. Executive Order 14321 violates the Fifth Amendment because it requires individuals experiencing homelessness to disclose sensitive personal information, including mental health history, substance use information, disability details, and behavioral data, as a condition of receiving shelter, services, or access to HUD–supported programs. The Order then requires service providers to share that information with law enforcement agencies. This compelled disclosure operates as an investigative tool for identifying and targeting homeless individuals for detention, civil commitment, or involvement with the criminal legal system.

72. Compelling a person to reveal information that may expose them to detention, confinement, or criminal consequences implicates the

28

constitutional privilege against self-incrimination. The Supreme Court has held that the government may not force individuals to provide information that is incriminating or that could be used to justify adverse legal action. Executive Order 14321 violates this principle by creating a system in which homeless individuals must provide sensitive information knowing that the information will be transmitted to police and used for enforcement purposes.

73. In addition to violating the privilege against self-incrimination, Executive Order 14321 infringes upon recognized privacy rights under the Fifth Amendment. The government may not intrude upon an individual's private health information or force disclosure of medical and mental health details without adequate justification or procedural protections. The Order's directives require individuals to surrender private information at the moment they seek basic humanitarian assistance. Homeless individuals do not relinquish their constitutional rights by asking for shelter, food, or services, and they may not be coerced into waiving their privacy rights as a condition of accessing safety.

74. Executive Order 14321 also violates Fifth Amendment liberty interests by authorizing detention, involuntary treatment, and civil commitment without adequate justification or due process. The Fifth Amendment, like the Fourteenth Amendment, protects individuals from arbitrary deprivation of liberty by the federal government. The Order directs

federal agencies and grant recipients to detain individuals based on homelessness, poverty, or disability—conditions that have no connection to criminal conduct or actual dangerousness. Depriving individuals of their liberty for these reasons is arbitrary, punitive, and inconsistent with constitutional guarantees.

75. These violations are particularly severe because the Order targets individuals who require essential services and who may be forced to choose between accessing shelter or preserving their constitutional rights. The Constitution does not permit the federal government to condition survival-level assistance on the surrender of privacy or the disclosure of incriminating information.

76. Plaintiff is directly threatened by these unconstitutional requirements. Plaintiff relies on HUD-funded services to maintain minimal safety and stability. Under Executive Order 14321, Plaintiff may be required to disclose sensitive medical and behavioral information simply to access shelter, and that information may be transmitted to police and used to justify detention or civil commitment. Plaintiff also faces the risk of losing his liberty without due process once the HUD cuts and enforcement provisions take effect.

77. For these reasons, Executive Order 14321 violates the Fifth Amendment, and Plaintiff is entitled to declaratory and injunctive relief.

## Count VI – Violation of the Eighth Amendment (Punishment of Status and Cruel and Unusual Treatment)

78. Plaintiff incorporates all prior allegations as if fully stated here. This claim arises under the Eighth Amendment, which prohibits the government from imposing punishment that is cruel and unusual and forbids punishment based solely on a person's status, condition, or involuntary circumstances. Punishing individuals because they are homeless, poor, disabled, or have mental health or substance use conditions violates core Eighth Amendment principles recognized by the Supreme Court.

79. Executive Order 14321 violates the Eighth Amendment because it establishes a system of punishment directed at individuals based exclusively on their homelessness, poverty, or disability, rather than any criminal act. The Order characterizes homelessness as *"endemic vagrancy,"* treats the presence of homeless people in public spaces as criminal behavior, and directs federal agencies and law enforcement to remove such individuals from public areas and place them into civil commitment or treatment centers. These consequences function as punitive measures imposed solely because of an individual's status.

80. The Supreme Court has held that the government may not punish individuals for conduct that is inseparable from their status or for conditions they cannot control. In *Robinson v. California*, the Court held that it is unconstitutional to criminalize addiction, because addiction is a status rather than an act. Similarly, detaining or institutionalizing individuals because they are homeless, disabled, or perceived as unable to care for themselves punishes status rather than conduct and therefore violates the Eighth Amendment.

81. Executive Order 14321 also results in cruel and unusual treatment by eliminating essential housing programs and then subjecting the resulting homeless population to detention, confinement, or forced treatment. The government may not create the very conditions it then uses as grounds to impose punitive measures. Eliminating Housing First programs and Continuum of Care funding will displace tens of thousands of individuals into homelessness. Using that homelessness as a justification for confinement is both punitive and cruel, given that the deprivation originates from the government's own policy choices.

82. The Order further authorizes and encourages practices that resemble criminal punishment, such as removal from public spaces, involuntary confinement, and forced participation in treatment programs, without

any criminal charge or conviction. Such actions impose severe burdens on personal liberty that amount to punishment without trial. The Eighth Amendment prohibits the federal government from imposing punitive consequences without the procedural protections required of the criminal justice system.

83. In addition, state implementations of Executive Order 14321 illustrate the punitive nature of the policy. Utah has announced the creation of "work conditioned housing" for homeless individuals detained under civil commitment authority. Requiring individuals to perform labor as a condition of receiving shelter or release from confinement is a punitive measure that resembles the work requirements historically imposed on criminal offenders. Applying such conditions to civil detainees who have not been convicted of any crime violates the Eighth Amendment's prohibition on cruel and unusual punishment.

84. Plaintiff is directly threatened by these unconstitutional provisions. Plaintiff is a disabled Black man who is at imminent risk of homelessness due to HUD's implementation of Executive Order 14321. Once homeless, Plaintiff becomes a target for detention, forced treatment, and potential placement in facilities where work requirements are imposed. These measures would punish Plaintiff for his homelessness, disability, and poverty, not for any criminal conduct.

85. For these reasons, Executive Order 14321 violates the Eighth Amendment's prohibition on cruel and unusual punishment and its prohibition against punishing individuals based on status alone. Plaintiff is entitled to declaratory and injunctive relief.

**Count VII – Violation of the Thirteenth Amendment (Involuntary Servitude)**

86. Plaintiff incorporates all prior allegations as if fully stated here. This claim arises under the Thirteenth Amendment, which prohibits slavery and involuntary servitude except as punishment for a crime for which the person has been duly convicted. The Thirteenth Amendment protects individuals from being forced to work or provide labor against their will, and it prohibits the government from imposing labor conditions on individuals who have not been convicted of any crime.

87. Executive Order 14321 violates the Thirteenth Amendment because it authorizes and encourages the creation of systems in which homeless individuals, disabled individuals, and individuals subject to civil commitment may be compelled to perform labor as a condition of housing, treatment, or release. The Executive Order directs federal agencies to support and expand civil commitment programs and *"treatment centers,"* and it encourages states to broaden their civil commitment criteria. Civil commitment is not criminal punishment, and

individuals placed into civil facilities retain full protection under the Thirteenth Amendment.

88. States implementing Executive Order 14321 have made clear that involuntary labor will be required in such facilities. Utah, for example, has publicly announced the creation of *"work conditioned housing"* as part of its compliance with Executive Order 14321. The state has stated that homeless individuals detained in its civil commitment facility will be required to participate in work programs as a condition of their placement or release. These programs constitute compulsory labor. Because the individuals detained in these facilities have not been charged with or convicted of any crime, the *"punishment for a crime"* exception does not apply, and the labor requirements violate the Thirteenth Amendment.

89. The Supreme Court has consistently held that the Thirteenth Amendment prohibits not only actual forced labor but also governmental schemes designed to coerce labor through threats of confinement or legal sanctions. Executive Order 14321 produces such coercion by creating a structure in which individuals lose housing because of federal policy choices and then face detention in facilities where work is required. The government may not manufacture homelessness through its housing cuts and then use the resulting homelessness to funnel

individuals into facilities that require labor as a condition of shelter or liberty.

90. Executive Order 14321 also violates the Thirteenth Amendment by authorizing forms of civil detention that are punitive in nature and that include compulsory treatment, compulsory participation in programs, and other forms of compelled labor. Civil commitment is not a criminal sentence, and individuals confined in such facilities may not be forced to work or participate in labor programs. Any attempt to impose work conditions on civil detainees is unconstitutional.

91. The involuntary servitude concerns created by Executive Order 14321 are especially severe because the Order targets individuals who are homeless, disabled, and impoverished. These individuals are uniquely vulnerable to coercion and may be compelled to comply with labor requirements simply to avoid sleeping on the street or losing access to basic necessities. The Thirteenth Amendment prohibits using a person's vulnerability or poverty as a means of extracting labor.

92. Plaintiff is directly threatened by these unconstitutional practices. Plaintiff is a disabled Black man who relies on HUD–funded services for shelter. The implementation of Executive Order 14321 places Plaintiff at immediate risk of becoming homeless. Once homeless, Plaintiff may be detained or subjected to civil commitment under the Order, and, as demonstrated in Utah's implementation, may be required to perform

labor as a condition of placement or release. Plaintiff has not currently been convicted of any crime, and any attempt to compel Plaintiff to work under these circumstances would violate the Thirteenth Amendment.

93. For these reasons, Executive Order 14321 violates the Thirteenth Amendment's prohibition on involuntary servitude, and Plaintiff is entitled to declaratory and injunctive relief.

**Count VIII – Violation of the Americans with Disabilities Act (Title II)**

94. Plaintiff incorporates all prior allegations as if fully stated here. This claim arises under Title II of the Americans with Disabilities Act, which prohibits public entities from discriminating against qualified individuals with disabilities and requires the government to provide reasonable modifications to avoid discrimination. Title II also includes the "integration mandate," interpreted by the Supreme Court in *Olmstead v. L.C.*, which requires that individuals with disabilities be served in the most integrated setting appropriate to their needs and prohibits unnecessary institutionalization.

95. Executive Order 14321 violates Title II of the ADA because it discriminates against individuals with disabilities, eliminates existing disability accommodations, and forces disabled individuals into institutional

settings when such placement is not medically justified. The Order explicitly targets individuals with mental health conditions, substance use disorders, cognitive impairments, and other disabilities, labeling them presumptively dangerous or incapable of caring for themselves and directing federal agencies to remove them from public spaces and place them into involuntary treatment or civil commitment facilities. Targeting disability status as a basis for detention is discriminatory and violates the ADA's core protections.

96. The Executive Order further violates the ADA by dismantling Housing First, which has long operated as a reasonable accommodation for disabled individuals experiencing homelessness. The vast majority of individuals in permanent supportive housing and Housing First programs have disabilities recognized under the ADA. These programs enable disabled individuals to remain in the community, obtain stability, and avoid unnecessary institutionalization. Eliminating these programs removes essential accommodations and foreseeably forces disabled individuals into homelessness, where they are then subjected to detention, civil commitment, and forced treatment under the Executive Order's enforcement structure.

97. Unnecessary institutionalization is itself a form of discrimination under the ADA. The Supreme Court in *Olmstead* held that public entities must provide services in the most integrated setting appropriate to the needs

of individuals with disabilities and that unjustified isolation constitutes discrimination. Executive Order 14321 violates this mandate by directing federal agencies and state partners to place disabled individuals into treatment centers and civil commitment facilities not because treatment is appropriate, but because they are homeless or perceived as unable to care for themselves. This is the very form of unnecessary institutionalization that *Olmstead* forbids.

98. Executive Order 14321 also violates Title II by authorizing data collection and information-sharing practices that disproportionately burden individuals with disabilities. The Order directs HUD-funded programs to collect detailed information regarding mental health conditions, substance use disorders, disabilities, and behavioral history, and then to share that information with law enforcement agencies. Compelling disabled individuals to disclose private disability-related information to access shelter or services, and using that information to target them for detention or civil commitment, constitutes discrimination and denies disabled individuals equal access to public programs.

99. The ADA requires that public programs, including HUD-funded housing and homelessness services, be accessible to individuals with disabilities and that individuals not be excluded or placed at risk of institutionalization due to discriminatory policies. Executive Order 14321 violates this requirement by eliminating accessible housing programs,

placing disabled individuals at heightened risk of institutionalization, and denying them equal access to HUD-funded services.

100.    Plaintiff is a qualified individual with disabilities under the ADA. Plaintiff relies on HUD-funded programs that have long operated as reasonable accommodations supporting his ability to remain safely housed and integrated in the community. The dismantling of these programs places Plaintiff at immediate risk of homelessness, institutionalization, and forced treatment. Plaintiff faces discrimination and loss of liberty because of his disabilities, in direct violation of Title II of the ADA.

101.    For these reasons, Executive Order 14321 violates Title II of the Americans with Disabilities Act, and Plaintiff is entitled to declaratory and injunctive relief.

**Count IX – Violation of Title VI of the Civil Rights Act of 1964**

102.    Plaintiff incorporates all prior allegations as if fully stated here. This claim arises under Title VI of the Civil Rights Act of 1964, which prohibits discrimination on the basis of race, color, or national origin in any program or activity receiving federal financial assistance. Title VI forbids both intentional discrimination and policies that have an

unjustified disparate impact on protected racial and ethnic groups when implemented by federally funded entities or through federally controlled programs.

103.    Executive Order 14321 violates Title VI because it directs and compels HUD, a federal agency whose programs operate entirely through federal funding, to implement policies that disproportionately harm Black and Hispanic individuals. The Executive Order instructs HUD to eliminate Housing First and drastically reduce Continuum of Care funding, actions that will force an estimated 170,000 individuals into homelessness. HUD's own national demographic data show that these programs overwhelmingly serve Black and Latino individuals who are already disproportionately represented among people experiencing homelessness. Forcing these individuals into homelessness through federal action constitutes a racially disparate impact prohibited by Title VI.

104.    Executive Order 14321 then uses the homelessness caused by these cuts as the basis for enforcement actions including forced removal from public spaces, involuntary treatment, and civil commitment. Because Black and Latino individuals will become homeless in disproportionately high numbers as a direct result of the Order, they will also be disproportionately targeted for detention, institutionalization, and surveillance once these enforcement mechanisms are in place. The

41

federal government was repeatedly warned about this racially disparate impact by state and local officials, national organizations, and members of Congress before carrying out these actions.

105.    Title VI prohibits policies that disproportionately burden racial minorities unless those policies are necessary to achieve a substantial and legitimate government interest and no less discriminatory alternative exists. Eliminating housing programs that prevent homelessness and replacing them with detention and institutionalization does not serve any legitimate governmental purpose and is not narrowly tailored. A policy that deliberately dismantles functioning housing programs and then subjects the displaced population—disproportionately Black and Brown individuals—to confinement is discriminatory under the standards of Title VI.

106.    Executive Order 14321 also violates Title VI by authorizing data collection and information-sharing practices that impose unique burdens on racial minorities. The Order requires HUD-funded providers to collect personal information about individuals experiencing homelessness, including mental health history, substance use information, disability details, and other sensitive data, and to share that information with law enforcement. Because Black and Hispanic individuals are disproportionately present in homeless populations,

these racial groups are disproportionately subjected to privacy
intrusions, surveillance, and subsequent enforcement actions.

107.    HUD-funded programs must comply with Title VI and may not
administer federal funds in a manner that discriminates on the basis of
race or produces unjustified racial disparities. Executive Order 14321
places HUD in direct violation of these obligations by forcing the agency
to administer programs in a way that creates racially disparate harms
and funnels racial minorities into institutional settings or detention
facilities.

108.    Plaintiff is a Black man who relies on HUD-funded programs for
shelter and basic safety. The elimination of these programs and the
enforcement mechanisms mandated by Executive Order 14321 place
Plaintiff at immediate risk of homelessness, surveillance, and
institutionalization. Plaintiff will be disproportionately harmed because
of his race, and these harms result directly from federal policy decisions
governed by Title VI.

109.    For these reasons, Executive Order 14321 violates Title VI of the
Civil Rights Act of 1964, and Plaintiff is entitled to declaratory and
injunctive relief.

**Count X – Violation of the Administrative Procedure Act (5 U.S.C. § 706)**

110.      Plaintiff incorporates all prior allegations as if fully stated here. This claim arises under the Administrative Procedure Act, 5 U.S.C. § 701 et seq., which prohibits federal agencies from taking actions that are arbitrary, capricious, an abuse of discretion, contrary to constitutional rights, in excess of statutory authority, or undertaken without observance of required procedures. The APA also requires agencies to provide reasoned explanations for policy changes and to consider reliance interests and foreseeable harms.

111. HUD's implementation of Executive Order 14321 violates the APA because the agency took actions that are arbitrary and capricious, lack any rational basis, and directly contravene statutory mandates governing federal housing programs. HUD cut approximately seventy percent of Housing First and Continuum of Care funding, eliminated long-standing disability accommodations, and initiated a nationwide restructuring of homelessness policy without demonstrating that these actions further any legitimate purpose established by Congress. These funding decisions will force an estimated 170,000 people into homelessness—an outcome that HUD failed to justify, analyze, or mitigate.

112. HUD's actions are arbitrary and capricious because the agency failed to consider important aspects of the problem, including the reliance interests of disabled individuals, local governments, service providers, and communities that have used these federal programs for decades. The Supreme Court has held that when an agency reverses a long-standing policy or disrupts substantial reliance interests, it must provide a reasoned explanation for the change. HUD provided no such explanation and disregarded widespread warnings that its actions would create mass homelessness, service gaps, and long-term harm.

113. HUD's implementation of Executive Order 14321 also exceeds the agency's statutory authority. The Department of Housing and Urban Development was created to support safe, accessible, and stable housing. Congress has repeatedly funded the Continuum of Care program and Housing First approaches to address homelessness. Eliminating these programs and replacing them with a system that pushes disabled and impoverished individuals into homelessness and funnels them into civil commitment facilities is contrary to HUD's statutory mandate and therefore unlawful under § 706(2)(C).

114. HUD further violated the APA by failing to engage in required procedural steps. Major policy changes of this magnitude typically require notice-and-comment rulemaking when they alter the rights, obligations, or access to services for hundreds of thousands of individuals. HUD

implemented the directives of Executive Order 14321 without providing notice, soliciting public input, or offering any opportunity for stakeholders to comment. This failure to follow required procedures renders the agency's actions invalid under § 706(2)(D).

115. HUD's actions also violate the APA because they are contrary to constitutional rights. The APA prohibits agency actions that infringe upon constitutional protections. HUD's implementation of the Executive Order results in due process violations, equal protection violations, Fourth Amendment violations, Eighth Amendment violations, and ADA and Title VI violations. Agency actions that produce unconstitutional results are unlawful under § 706(2)(B).

116.    Additionally, HUD's data-collection and information-sharing mandates are arbitrary and unsupported by reasoned decisionmaking. Requiring homeless service providers to collect sensitive medical and disability information and share it with law enforcement without clear standards, safeguards, or statutory authorization is an abuse of discretion and exceeds the agency's lawful authority.

117. Plaintiff is directly harmed by HUD's unlawful actions. Plaintiff relies on HUD-funded programs for shelter and basic safety. HUD's implementation of Executive Order 14321 places Plaintiff at immediate

risk of losing shelter, being forced into homelessness, and becoming subject to surveillance, detention, and civil commitment. These harms result directly from agency actions that are arbitrary, capricious, unconstitutional, and in excess of HUD's statutory authority.

118.     For these reasons, HUD's actions under Executive Order 14321 violate the Administrative Procedure Act, and Plaintiff is entitled to declaratory and injunctive relief.

### Count XI – Declaratory Judgment (28 U.S.C. §§ 2201-2202)

119.     Plaintiff incorporates all prior allegations as if fully stated here. This claim is brought under the Declaratory Judgment Act, 28 U.S.C. §§ 2201–2202, which authorizes federal courts to declare the rights and legal obligations of the parties when an actual controversy exists. A declaratory judgment is appropriate where, as here, the challenged government action poses an imminent and concrete threat to the plaintiff's legal rights and where declaratory relief will resolve the parties' dispute.

120.     An actual, immediate, and substantial controversy exists between Plaintiff and Defendants regarding the constitutionality and legality of Executive Order 14321 and the actions being taken to implement it.

Plaintiff is directly affected by the Executive Order and HUD's enforcement actions. The dismantling of Housing First programs, elimination of Continuum of Care funding, expansion of civil commitment practices, and mandated data-sharing requirements place Plaintiff at immediate risk of homelessness, surveillance, detention, forced treatment, institutionalization, and involuntary servitude. These harms are not speculative, as HUD has already taken concrete steps to implement the Executive Order and public officials have confirmed that the resulting service cuts will take effect in early 2026.

121. Plaintiff seeks a declaration that Executive Order 14321, and the actions taken by HUD and other federal officials to implement it, violate the Constitution and the laws of the United States. Declaratory relief is necessary to clarify Plaintiff's rights, to prevent unlawful enforcement of the Executive Order against Plaintiff, and to guide future conduct by federal agencies. Without such relief, Plaintiff faces substantial and irreparable harm resulting from policies that are unconstitutional, discriminatory, and contrary to federal law.

122. A declaratory judgment is appropriate because it will settle the legal issues in dispute and will serve a useful purpose in resolving the parties' rights. It will confirm that federal officials may not enforce Executive Order 14321 in a manner that violates the Constitution, exceeds statutory authority, or infringes upon fundamental rights. It will also

establish the legal standards governing any future enforcement actions that may affect Plaintiff.

123.     Plaintiff also seeks any further necessary or proper relief under 28 U.S.C. § 2202, including injunctive relief preventing Defendants from enforcing or implementing Executive Order 14321 in any manner that violates federal law. Declaratory and injunctive relief are especially appropriate where, as here, Plaintiff faces immediate and ongoing threats to constitutional rights and basic liberty interests.

124.     For these reasons, Plaintiff is entitled to a declaratory judgment that Executive Order 14321 and its implementing actions are unlawful and unconstitutional, as well as such further relief as the Court deems necessary and proper.

## **PRAYER FOR RELIEF**

Plaintiff respectfully requests that this Court enter judgment in his favor and grant the following relief:

A. Plaintiff requests a declaration that Executive Order 14321 is unconstitutional and unlawful. Plaintiff further requests a declaration that the actions taken by HUD and other federal officials to implement the Executive Order violate the

Constitution, the Americans with Disabilities Act, Title VI of the Civil Rights Act, and the Administrative Procedure Act.

B. Plaintiff requests injunctive relief prohibiting Defendants from enforcing or implementing Executive Order 14321 in any manner that results in detention, civil commitment, forced treatment, removal from public spaces, involuntary servitude, or institutionalization based on homelessness, disability, poverty, or any other status-based characteristic. Plaintiff also seeks to enjoin the federal government from dismantling Housing First, terminating Continuum of Care funding, or eliminating other HUD programs that serve as reasonable accommodations for people with disabilities.

C. Plaintiff requests injunctive relief preventing HUD from collecting or requiring the collection of private medical, disability, or behavioral information from individuals seeking shelter or services, and from sharing such information with law enforcement agencies without valid legal authority or individualized cause.

D. Plaintiff requests injunctive relief prohibiting the federal government from implementing any program or policy created under Executive Order 14321 that requires or coerces involuntary labor, including any "work conditioned housing" or similar program imposed on individuals who have not been convicted of a crime.

E.  Plaintiff requests that the Court order Defendants to take reasonable steps to prevent the foreseeable harm caused by the elimination of Housing First and Continuum of Care funding, including maintaining existing program levels while this litigation is pending and ensuring that individuals currently receiving services are not displaced into homelessness.

F.  Plaintiff requests reasonable attorney's fees and costs if counsel is appointed at a later stage of the litigation, or if Plaintiff later obtains representation, as permitted under 42 U.S.C. § 1988 and other applicable statutes.

G.  Plaintiff requests any further relief that this Court deems just, proper, and necessary to protect Plaintiff's constitutional and statutory rights.

Respectfully submitted,

/s/ Thomas L. L. Gibson

Plaintiff, *Pro Se*

11600 Nebel Street

Rockville, MD 20852

(443)-679-2213

thomasgibsoncoder@gmail.com